UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELE L. MARTIN,

    Plaintiff,

v.                                         CASE NO. 8:05-cv-1921-T-26MAP

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), the Plaintiff seeks review of the Commissioner's decision denying her Disability Insurance Benefits ("DIB") and supplemental security income ("SSI").[1] Essentially, she argues the Administrative Law Judge ("ALJ") erred by: 1) determining she did not suffer a severe impairment from reflex sympathetic dystrophy syndrome (RSD); 2) determining she could perform a limited range of light work; 3) failing to adequately indicate what weight he accorded to her treating physician and other evidence; 4) failing to properly evaluate her credibility and the credibility of other witnesses; and 5) posing an inaccurate hypothetical to the vocational expert. After consideration, I recommend the Plaintiff's complaint be dismissed and judgment entered for the Commissioner for the reasons set forth herein.

*Background*

Plaintiff was 32 years old at the time of her administrative hearing on June 6, 2002. She graduated from high school and her past work includes work as a deli meat cutter for Publix, a

---

[1] The district judge referred this matter to me for a report and recommendation.

pressure cleaner, a title clerk for a car dealership, a cashier, and a pizza maker. Plaintiff suffers from migraine headaches, severe neck, shoulder, and upper extremity pain, burning pain in her feet, and depression. Her disability onset date is January 8, 2001; she claims she last worked on March 16, 2000, when she was terminated by Publix due to her inability to perform the functions of her job.

At her administrative hearing, Plaintiff testified she suffered a work-related carpal tunnel injury while working as a cashier at WalMart in 1991. She underwent three surgical procedures on each side between 1991 and 1994, and although she worked for a year and a half as a pressure cleaner and then for two years as a file clerk for Brandon Ford after these procedures, she claims her condition has worsened since her surgeries. Plaintiff testified the pain and cramping she experiences in her upper and lower extremities is constant, and rates it as a 10 on a scale of 1 to 10 on a daily basis. She says she is unable to grip papers, open jars, hold the steering wheel of her car, push, pull, or lift due to her diminished arm strength. Similarly, Plaintiff testified she is unable to stand due to joint pain and swelling for about an hour every morning. On bad days, which occur three to four times a week, Plaintiff says she sits on her couch or in a chair.

She experiences migraine headaches every day that affect her ability to focus and concentrate, and severe ones three to four times a month lasting a couple of days each time. She also has panic attacks and crying spells a couple times a day. Plaintiff testified she is unable to shower due to her inability to stand for long periods of time, and that she sometimes needs assistance from her boyfriend to bathe, dress, comb her hair, and put on shoes. To control her symptoms, Plaintiff uses hot packs three to four hours a day, stays in a recliner, and takes methadone (for pain), Remeron (for depression), Clozapam (for angina), and medications for panic attacks, inflammation, and a

muscle relaxer.

Plaintiff filed for SSI and disability benefits on February 21, 2001. The ALJ denied her claims initially and again on reconsideration. Per her request, the ALJ held a hearing on June 6, 2002, and thereafter he issued a written decision denying her benefits and finding her capable of performing certain jobs in the national economy at the light work level. Plaintiff has exhausted her administrative remedies and her case is now ripe for review.

*Standard of Review*

To be entitled to disability insurance benefits a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix

1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(f), 416.920(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. 42 U.S.C. § 405(g); *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further, the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (remanding for clarification).

*Discussion*

*1. RSD*

Plaintiff claims the ALJ erred in concluding she is not impaired due to RSD. Specifically, she asserts she has "little of no functionality of her upper extremities" and is clearly disabled. The Commissioner, in contrast, asserts that the ALJ found Plaintiff's neck pain, shoulder pain, and arm

pain were severe impairments at step two of the sequential analysis, a conclusion akin to finding she suffers from RSD since her pain is caused by her alleged RSD symptoms.

RSD is a complex syndrome and on October 20, 2003, the Social Security Administration published a ruling explaining its policies for developing and evaluating claims for disability based on reflex sympathetic dystrophy syndrome (RSDS). *See* SSR 03-2p, 2003 WL 22399117. The ruling states that for purposes of social security disability evaluation, RSDS can be established in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant and one or more of the following: 1) swelling; 2) autonomic instability (changes in skin color or texture, changes in sweating, changes in skin temperature, and abnormal pilometer erection; 3) abnormal hair or nail growth; osteoporisis; or involuntary movements of the affected region of the initial injury. Although the ruling clearly establishes that in RSD conflicting evidence in the medical record is not unusual due to the transitory nature of its objective findings and the complicated diagnostic process, here the medical records consistently state that Plaintiff had "possible RSD" and "probable RSDS" (R. 325, 413) and her EMG and NCV studies were normal (R. 276, 326, 335, 339, 353)

In reviewing Plaintiff's treating medical records, diagnostic testing, and consulting medical reports, the ALJ concluded she did not suffer from the severe impairment of RSD. Instead, the ALJ concluded Plaintiff was severely impaired due to neck pain, shoulder pain, and arm pain. He did not disregard the medical evidence or fail to adequately weigh it. Indeed, I find substantial evidence supports the ALJ's conclusions. And, as the Commissioner notes, even assuming Plaintiff does in fact suffer from RSD, I find no error because the ALJ found Plaintiff suffers from a severe impairment at step two that encompasses the upper extremity pain allegedly caused by RSD. Hence,

it is irrelevant that the ALJ could have identified the alleged condition by the name RSD since he accounted for the related limitations.

    2. *Light work*

Plaintiff asserts the ALJ erred in concluding she retains the residual functional capacity to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight hour workday, sit for about six hours in an eight hour workday, occasionally reach, handle, finger, and feel with either upper extremity, and is limited to jobs with a sit/ stand option with simple repetitive tasks.  Specifically, she states her fatigue, constant pain, and migraine headaches would prevent her from performing such work.  In response, the Commissioner contends the ALJ properly considered the relevant evidence and his conclusion Plaintiff can perform light work is consistent with the medical evidence and supported by substantial evidence.

The ALJ properly applied *Holt* pain standard and his determination that Plaintiff's subjective complaints are unsupported by objective medical evidence is correct.  Although the ALJ does not cite or refer to the language of the three-part test in *Holt*, his findings and discussion indicate that the standard was applied.  *See Wilson v. Barnhart*. 284 F.3d 1219, 1225-26 (11th Cir. 2002).  The ALJ discussed Plaintiff's subjective complaints and the objective medical evidence at length, recognizing that "careful consideration must be given to any available information about symptoms" because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone" (R. 29). In doing so, the ALJ concluded that Plaintiff's subjective complaints were only partially credible to the extent they are compatible with the residual capacity described above.  The ALJ's determinations are consistent with the limitations imposed by

Plaintiff's treating doctors – Dr. Patterson opined on four separate occasions in 1995 that she was capable of full time light work with limited lifting to no more than ten pounds and no repetitive use of upper extremities (R. 272, 274-75, 278) and in May 1994 Dr. Batas opined she could return to work with no repetitive hand activities and maximum lifting of five pounds. (R. 285).

### 3. *Treating doctors*

Plaintiff broadly asserts that the ALJ "did not note the weight accorded each opinion in the record." The only specific contention of error is that the ALJ failed to assign weight to Dr. Sidhom's opinions. As the Commissioner mentions, however, the weight afforded a medical source's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ discussed Dr. Sidhom's findings and treatment (R. 27), but since this doctor failed to articulate any findings concerning Plaintiff's ability to work or functional limitations, the ALJ did not state the weight assigned to Dr. Sidhom's records. Dr. Sidhom's records consist only of a diagnosis of chronic pain syndrome, a summary of his findings on examination and Plaintiff's subjective complaints, and prescriptions for medications (R. 393-99). Because Dr. Sidhom did not make any specific findings about Plaintiff's ability to work or impose any functional limitations, I find the ALJ did not err in failing to specifically state the weight given to his records. Furthermore, I find the ALJ properly weighed the medical evidence from all of Plaintiff's treating doctors, and his decision is supported by substantial evidence.

### 4. *Credibility findings*

Plaintiff asserts the ALJ improperly discredited her and her boyfriend's testimony. As the

Commissioner notes, the ALJ adequately considered the Plaintiff's testimony and her boyfriend only reiterated her own testimony. The ALJ discussed his reasons for finding Plaintiff's testimony not fully credible, stating her subjective complaints were inconsistent with the objective medical evidence. The Plaintiff's boyfriend reiterated her testimony that she suffers from upper extremity pain, that she spends most of the day on the couch or in bed, and that he does all of the work around their house. Although the ALJ did not dissect the Plaintiff's boyfriend's testimony, he adequately addressed the same assertions in the Plaintiff's testimony and concluded it was not wholly credible because it was inconsistent with the weight of the medical evidence. By rejecting the Plaintiff's testimony to the extent it was unsupported by the objective evidence, the ALJ implicitly rejected the boyfriend's duplicative testimony and I find his failure to explicitly reject the boyfriend's testimony is harmless error. *See generally Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir. 1986) (ALJ's refusal to hear testimony from claimant's wife and two friends as to extent of Plaintiff's pain was harmless error where other record evidence showed that testimony would have been irrelevant to ALJ's final decision); *Young v. Apfel*, 221 F.3d 1065 (8th Cir. 2000) (ALJ's failure to give specific reasons for disregarding plaintiff's husband's testimony was inconsequential since same evidence ALJ used to discount plaintiff's testimony also supported discounting husband's testimony); *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1993) (ALJ's failure to discuss plaintiff's brother's testimony not error where it reiterated and corroborated plaintiff's own testimony and ALJ found plaintiff's testimony untenable in light of other evidence); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (ALJ's failure to discuss plaintiff's son's testimony was harmless error because the ALJ's decision supported by medical evidence).

     5. *VE hypothetical*

The Plaintiff contends the ALJ's hypothetical posed to the VE should have referred to her migraine headaches. The ALJ's hypothetical posed to a vocational expert must comprehensively describe the plaintiff's limitations. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). Of course, the ALJ is not required to include limitations found not credible or those that do not meet the twelve month durational requirement, and submits to the expert only those supported by objective evidence of record. *See McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987). A review of the record reveals that the ALJ posed multiple hypotheticals to the vocational expert which represented all the credible impairments determined to exist by the ALJ. These hypotheticals were comprehensive and encompassed Plaintiff's severe impairments and the limitations imposed by her physicians.

*Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

II    That Plaintiff's complaint be dismissed and the Commissioner's decision be affirmed.

II    That the Clerk be directed to enter judgment for the Commissioner.

IT IS SO REPORTED in chambers at Tampa, Florida on January 18, 2007.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted, or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02, *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982)(*en banc*).

Copies furnished to:
The Hon. Richard A. Lazzara
Counsel of Record